Company, et al., oral argument and act of defense, and it is presided over by Mr. Helms and Mrs. Trivia Pallett. Good morning, Judge Bikes. I'd like to reserve five minutes for a bottle of pipe. You may. This case is, I believe, relatively simple. It involves the question of whether a policy provision in various disability policies was or was not ambiguous. The policy phrase that is at issue provides that an insured is totally disabled if he is unable to perform the important duties of his occupation. The lower court held that that provision is ambiguous because it could mean one of two things. In the district court's opinion, that provision could mean that the insured is totally disabled if he is unable to perform all of the important duties, which is the position we took. He also held that it was ambiguous because that language could also support the construction, unable to perform an important duty, or one important duty, or some important duties of his occupation. Let me ask you this question. If the insurance company wanted to insure for disability for all occupations, why didn't it say so? All occupational duties, I believe, is what you're asking. All occupational duties. The simple answer, Your Honor, is it didn't need to because the phrase, unable to perform the important occupational duties, grammatically, syntactically means unable to perform the entire constellation of duties. And therein lay the district court's primary error. And that's what the debate is about here. That is exactly right, Your Honor. Would it be correct to say that your position is that your position is supported by the rules of grammar? That's partially correct, Your Honor. It is correct to say that. Supported by the rules of grammar. As well as other rules of statutory construction. If you say it's supported by the rules of grammar, you must be saying that it's supported by every single one of the rules of grammar. Is that correct? I suppose so. It should be. Okay, so you were wrong. You have to back off of your first statement. But isn't that a normal way of speaking? In fact, you bought it immediately. You said something was supported by the rules of grammar, but what you meant was some of the rules of grammar. And you said yes. No, no, no, no, no, no. What I said was, I thought your question was, does it have to be supported by... It is. But it's not supported by all the rules of grammar. Well, it would be supported by all of the rules of grammar that would apply. But that isn't what the sentence was. It was all the rules of grammar. So what you must have meant is it's supported by every one. But people don't speak that way. Yeah, they do, Your Honor. They do. When my client asks me, who are the judges on our panel? If I gave her an answer other than... Her answer would be, it depends on context. I think that's fair. And when you say, who are the judges on your panel? You mean who are all the judges on the panel. Exactly. But if you say, is this supported by the rules of grammar? You mean some of the rules of grammar. Because no position is supported by every single one of them. So you've got to kind of look at the context, right? I think that's fair. So if you say, for instance, it snowed yesterday and the snowflakes got in my hair. Perfectly good language, right? You don't mean every snowflake got in your hair. You mean some of the snowflakes. But we know that because of the context, right? Sure. So whether the plus plural means all the plus plurals just depends on the context. It's not a rigid grammatical rule. It's a rule that goes one way or the other depending on context, right? It could be. I think so. And in this context, I don't see that there's any alternative construction. Because the rule of grammar that we are talking about... Well, it's not a very hard rule because it just sometimes applies and sometimes doesn't. But, Your Honor, in this case, and there are cases, and we cite voluminous courts. Which are all in the context. In the context of wrestling with language that has the definite article V followed by a plural noun. And in the Class Action Fairness Act cases, for example. My question is, you know, the insurance company knows because it keeps up, hopefully, and I'm sure does, with the case law that comes out interpreting its own insurance statements and policies. And there have been other cases on this exact same question about what this language means. I don't know that they've all gone one direction. But the insurance company knows that there is a question about that that's been litigated. And if it wanted to be clear that this includes all occupations, like in this guy including his side businesses, they could very easily make it clear by saying all and defining it that way. But they did not do that. And so other cases before this case have said this is an ambiguity and have decided how the ambiguity should be resolved. That's all I'm saying. You know that there's a litigatable question here. If you want to be clear about it, not ambiguous about it, you put it in your policy. That's a correct observation, Your Honor. But I would add this. It's not ambiguous in the phraseology that is used. To be sure, there are other courts that have reached a contrary construction. The minority line of cases that the plaintiff has relied on and that the district court adopted reached that conclusion. Not one of those cases addressed the grammatical argument that we're making in this case. Not one of them. Why don't you change it and make it clear if you want it to be clear? A couple reasons. Number one, it's not unclear and it is not ambiguous. I mean, you can assert that all you want to, but there are a bunch of cases that say it is, and as Judge Rogers has pointed out, it's context. And so I just don't understand if you've got a big problem with this, why don't you just fix it? The other answer is, at least with the policies we're dealing with, those are not amendable after they're issued. I mean, that's a years-long process. And what we're dealing with is the language that we're confronted with in this case. The earliest of these is, what, 1990? I believe so, somewhere in that time frame. But the question is that I don't want to lose focus on it. And this goes back to your question, Judge Rogers. Does grammar matter? And the answer to that is, well, the principle, one of the underlying principles of Michigan law in interpreting contracts is, of course, you have to abide by rules of grammar. And I would be foolish if I were to say that it's grammar all the time, every time, and in every context you get the same results. These rules of grammar, when they help you. When it's contextual, it just seems to me it's on a case-by-case basis. And let's turn to this case. I think that's right, and I think that's fair. In this case, you're looking at the structure of a definite Article V followed by the plural noun important duties. In that pool of grammatical constructs, there's a wide range of whether it means all or not. So the rule is that if you have the plus the plural, the answer is it depends. In this case, I don't think it depends. You can't say, well, but when we have the plus a plural, grammar tells us one answer.  What more is there? If I could respond to that by using your example of it snowed out and the snow got in my hair. The snowflakes got in my hair. In that context, I could see the argument that you don't mean all of the snowflakes that came from the sky. That makes perfect sense. In the context that we are dealing with in this case is the phraseology the important duties of the occupation. That rule of grammar, if you apply it, the definite article plus a plural. All I'm resisting is by saying it's a rule that you apply. The rule is that you look at the context. Yeah, fair enough. Notice about the context that says that doesn't mean the bulk of the important duties. Because at that point, Your Honor, you would be adding language to the context. No, but you're adding language when you say the snowflakes. But the context permits the addition of that language by looking at what they probably meant. I don't think that's the case. It may not be, but you need an argument that doesn't just sort of unask the question. You have to make an argument that assumes that it might be one or the other and prove that it's one or the other. In this case, I don't think that there is an alternative construct that abides by any applicable rule of grammar that would arrive at the construction that it could... An alternative construct is it means the bulk or most of the important duties or the duties that together are important enough to constitute the occupation. That's another possible meaning. And you have the strict all of them possible meaning. And the grammar rule is you choose between those by looking at the context. It doesn't answer my question. How do I choose between those by looking at the context to say the rule requires one? The rule I'm positing requires that you look at the context. Do you see how you're kind of slipping around the question and saying it's not asked? I do understand the question. My time is up, but I would like to answer it. One way takes us to the second argument that we make. You look at the context of the entire policy because there the residual disability provisions inform in large way what the total disability provisions mean. So they fit hand in glove, really, Your Honor. Anything in any other case? No, thank you. Thanks. Thank you. You'll have your time for rebuttal. Good morning, Your Honors. My name is Michael Jacob. I am representing the appellee, Dr. Lenore. Initially, let me say, as we said in our brief, initially we did not request oral argument. We believe our brief more than adequately briefs the entire thing. With regard to a couple comments of appellant's counsel, I agree this is a simple case. The point is Dr. Lenore is a dentist. He's a dentist by education. He's a dentist by profession. He's a dentist by licensure, and it is absolutely, positively, unequivocally, undisputed. Got any more adverbs there? Well, I can try to add on a few more. I want to use the rules of grammar, Your Honor. But the point is he is totally disabled from practicing dentistry. And the important duties of practicing dentistry, unlike practice of law, we have a statute in Michigan, an Occupational Health Code, which identifies a number of procedures, and he is totally disabled from doing those. It could be very easily a lawyer doing this, too, who's quit practicing law, retired, but over the course of the years has built up a significant estate and invested in apartment buildings or shopping centers or whatever and continues to oversee his other assets. But this could be any kind of profession and have the same problem, and that's what this is, right? This is basically this guy quit practicing his basic profession for which he was educated or which he practiced for a long time, built up some assets, and he still manages those assets. It must be happens millions of times or hundreds of thousands of times. Right. Correct. But the point is, Your Honor, the policy specifically defines it's your occupation on the date of disability and Dr. Lenore on the date of disability. There are a lot of lawyer cases and not only dentist cases, doctor cases, lawyer cases, accountant cases, whatever, that have the same kind of problems in them. Yes, if I'm not mistaken, there was a case in Michigan where there was a criminal trial lawyer who became disabled and he became a judge, and the court, I believe, held that he was. . . I think you're familiar with that opinion. That's what we all do. That's right. And I believe Your Honor wrote that opinion. Counsel, I must say I'm concerned a little bit. If we rule in your favor, we may be creating something that really isn't fair to create, and that's when it says the important duties of your occupation, we say you're right, and therefore any important duty of your occupation, might just sort of turn it into undue grants of disability. You say, well, you know, I can do everything except floss teeth. But you don't have to be a dentist to floss teeth. Well, my example is not accurate because I don't know dentistry, but you could take some aspect of it that you can't do, but you can basically do the rest of it. Your hands are still good, but you can't read x-rays. Perhaps. Judge Fox can come up with a better example. But you get the idea. Yes, I get the idea. Is there a way we can interpret this so that it doesn't allow that kind of. . . I mean, rejecting that it's all of them doesn't mean that it's any of them, does it? I guess it's another way to ask the question. Not at all, and the point I'm saying is. . . What would be a fair interpretation of the language? Well, as I use the example in our brief, washing hands is an important duty. I'm asking for a fair interpretation rather than just an example. How would you characterize a less ambiguous way of stating what you think the alternative is to all? As the justice did, the primary, the most important, the critical duties. I mean, I wonder if Dr. Lenore. . . or most of the critical duties, or the duties which together are critical, or you don't want to help us and give us. . . Well, I can't. . . I'm not that familiar with the practice of dentistry where I could give you an answer that we all can relate. Yeah, but I'm asking about language that would be in any contract. Well, it's an under. . . Because I'm afraid that if we say it doesn't. . . the, what is it, the important duties means doesn't mean each one of the important duties, which might be too broad. Claimants are going to turn around and say, well, the Sixth Circuit says it means any one important duty. It can't mean that, though, can it? But the record we have here, I can't give you a specific example, Your Honor, without trying to really. . . I want to be thorough if I'm going to answer your question and give you a specific example. But in this case, the district court did not make that finding. The district court merely based its opinion on the fact that the provision was ambiguous and under Michigan law, ambiguities are construed against the drafter, and in this case, the insurance company, because it can be read more than one way. The cases that are offered by the appellant, of course, with the grammar argument, were all, for the most part, statutory construction cases, patent interpretation. They weren't contracts of insurance where the court was trying to construe the intent of the parties. Here we have a licensed dentist who admittedly can't practice dentistry. Yes, he had outside investments that allowed him to impose disability to devote more time to those, and even the deposition of Mr. Spar that we quoted. Isn't the problem here that if you're going to write this kind of occupational disability type insurance, that if you put in there that your occupation includes overseeing the assets that you acquired during the period of time when you're practicing your primary occupation, that you couldn't sell such a policy as that? I mean, who would buy a policy? I mean, who would buy that policy? It says this includes not only your occupation, but everything else that you've acquired during that period of time. I mean, you couldn't sell a policy like that. I wouldn't purchase that kind of policy because we all save money. We all manage our personal affairs. So if managing my personal affairs, you know, 5% of my time becomes my occupation if I no longer can practice law, and therefore I don't get my disability benefit, the only way I'm going to be totally disabled is I have nothing. I'm just an employee, and I get disabled. As I understand it, there's language in the second and third policies that talks about your occupation and other occupation. That is, the second and third policies seem to contemplate being a dentist and a manager, whereas the first contract doesn't, and which way does that cut? Well, the total disability benefit focuses on your primary occupation. The other two policies you're referring to talk about if you can become gainfully employed in another occupation. And other occupation. Correct. So that takes us back to whether your dentist, his primary occupation is dentistry or dentistry plus, as we use in our brief. But in this case, what happened is the insurance company defined the primary occupation as both, and that's why the district court interpreted the disability, the occupation as both. They defined it in the policy, or they defined it in the argument before the judge? They defined it in their letter cutting off the benefits, which now they're bound by, and we cited law in our brief on that. So it is the insurance company that took the position at the initial stages of this policy that Dr. Lenore was a practicing dentist and only a practicing dentist, and they paid him total disability benefits for over two years. They then received his income tax returns, and they saw he had substantial income on the outside because he was an entrepreneurial type of individual. And then they developed this theory. So you're saying that, in response to my question, you're saying that they developed that in litigation, not in their primary, that is, neither defined it in the policy nor defined it in their first letters. What I'm saying is they developed it pre-litigation, because in the 2011 letter. Not pre-litigation. They did develop it in the controversy with your client. That's correct. When they learned how successful Dr. Lenore is and was and had become. I'm sorry? How did they get his income tax returns? He gave it to them? Yes, they requested it, because they said earlier, we're going to classify your claim as residual disability benefit on the two little policies that Judge Boggs just referred to. So in order to try to demonstrate he would qualify for that benefit, he sends in his income tax returns, and then they went after the big policy, which was the 113 policy. And then less than a year later, they cut him off from everything. How much were they paying him under the disability policies? I believe it was $8,800 a month. It's in my brief. I don't have the exact number, Your Honor. Something like that. Yes. And that was on all three policies. And it had the cost of living writers increases. So they terminated the two little policies first, then they terminated the bigger policies, and obviously terminated them all together. He appealed within the organization, and they cut him off altogether, and we started the lawsuit. Your opposing counsel doesn't make arguments that are tailored just to what you're calling two little policies. No, he doesn't, because they have defined the occupation as dentist plus. But the argument would be stronger if they had language which helped them that they don't have with respect to the big policy. Maybe that's a question better directed. I mean, I defend the case. Was that much littler? I mean, I don't know. I believe one of them had a two-year benefit period, and I think they paid 15 months' worth of benefits, and the district court entered a judgment for the remaining nine months. The other policy, and I don't like to use the word little, but I'm saying it's the 8090 policy. In terms of comparison. Yes. And the other policy, I believe, was a, I may have stamped correct, 1,800 hours a month, and that went to age 65 only. And the policy 113 was a lifetime benefit because Dr. Lohr was totally disabled under age 50, I believe it was. I see. So that's how the policies read. As we said in our brief, I really have nothing further to add unless the panel has questions, but I'm asking that the court obviously affirm the district court. All right. Thank you. Thank you. Sir, you'll have your time for rebuttal. Thanks. I'd like to start with one statement that Mr. Jacobs said about him being a dentist and how the policy, how he was defined by the company. The company did not define his occupation. What happened was he filed his claim, and he said, I am unable to practice dentistry. I am in what he said was, quote, an entirely new occupation involving management of my practices. And it was on that basis that we paid him total disability benefits based on those representations. That was in 2009. It took two years of investigation to find out what his pre-disability duties actually were, and it wasn't until a report by the Naraki Accounting Company came out in 2011 that we for the first time understood that before he became disabled, he was spending about two-thirds of his time practicing dentistry and spending one-third of his time on the management and administrative duties. We also found out in 2011 for the first time that half of his income prior to his disability was derived from those management and ministerial activities. That's frequently the case with someone who has an occupation, a lawyer, let's take a lawyer, builds up a very substantial estate outside his practice. He steps down from his practice and continues to receive a lot of income from assets that he has created or have been created or maybe he inherited or whatever. And you're not trying to say that in all those cases when the lawyer, the doctor, the whoever steps down that managing the assets, that is collecting the revenues from the assets that have been created, that that management of those assets is a part of the occupation. Absolutely, I'm your honor. In this kind of case. In every case. Well, in this case. How are you going to sell an insurance policy to lawyers and others that say everything you've created during your law practice, when you're managing that, that will be considered an occupation and until you give that up, you can't collect any disability insurance. No, that's not what these policies say at all. Let me be absolutely clear. The definition in the policy is your occupation, and that's defined as your occupation that you are engaged in at the time of disability. And whenever there's a disability claim, you have to ask the question, what is your occupation and what are its important duties? This policy did not insure Mr. Lenore as a dentist. Let's say I'm a judge. I think of that as my occupation. But I also have, let us say, some assets outside that bring in as much or more than the salary I'm paid as a judge. I take out your policy and I continue to have those revenues coming in, and I'm disabled. It depends, your honor, on what the source. If those are just investment returns, no. But if it is the result of occupational duties that you're engaged in, like Mr. Lenore. He spent a third of his time managing. I had to refine Judge Merritt's question because I have the same question. Let's say that you're a brain surgeon and you're earning a lot of money, of course, being a brain surgeon, but you go blind and so you're no longer able to, I hope, able to do brain surgery. But in your spare time, you're a poet and you sell a few poems. In addition to the millions you make as a brain surgeon, you make $1,000 or more every month selling your poetry books. You can do that blind very easily. Under your theory, he's not disabled. He's the poet brain surgeon. That's his occupation. The question is, what are the material and substantial or important duties of your occupation? It's not everything that you do on the side. You still have the burden of identifying what has to be the bulk of it. It has to be an important duty of your occupation. He makes a lot more money as a poet than he does as a brain surgeon just because he got lucky with some book or as a novelist. Is it going to be based on the amount of money that comes in from what he does every day as a brain surgeon versus, I mean, how do you measure that? I think measurement in the amount of income is one measure. The amount of time spent doing the duties is probably another measure. The amount of dedicated time and money are probably the two main things that you would look at in determining what was your predisability occupation. It's not, what did you have a license in? What do you bill yourself as? It's, how did you earn your living, and after the disability, can you continue doing it? And in this case, he certainly could. Judge Rodgers could. It makes sense to me, but it makes sense in terms of the bulk of your activities rather than every single one of your activities. The grammatical argument doesn't fit well with what you just described. I think it does, though, Your Honor, because if you asked, does it support the construction that the district court gave? Unable to perform an important duty or some important duties can't make it fit. See, that's why I'm wondering why you can't suggest something other. Do we have to go to one extreme or the other? Why can't the ambiguity include most of the important activities? My answer would be this. Or part of the important activities, because that's, in context, probably what was conveyed. In context, I think it's this. If you're able to do some important duties and you're making money, you're probably residually disabled. That's when that provision kicks in. In the poet example, he'd only get residual. If he had a loss of income, he wouldn't be totally disabled. Some of those poems are worth $100. I think that would be the case. And when you say that the snow... Let me ask you a question that is not formally relevant, but I'm curious. I take it that under the two little policies... I don't know what you want to... I don't want to call them little, but you know what we're talking about. Under those policies, there's language which, in my view, far more strongly supports you than the language in the big policy. You just sort of made a strategic choice to focus on the big one. The argument that we're making on appeal applies to all of the policies. We made arguments in the district court that the district court rejected. We don't urge them on appeal because it's this argument. You want to focus on, so it's sort of a pellet. I mean, it's commendable. You take the pellet arguments that you care most about. Yes, and that one disposes... Even if they're not the stronger. I think this is the stronger. You think it's stronger than the argument with respect to the two little ones, which has specific language about... Given the district court's... I remember looking at it and saying, well, on the two little ones, he wins. Given the district court's disposition of it. When you say that the snowflakes hit me, I think that's wrong in thinking about it. I think that what you actually mean when you say that is you mean some of the snowflakes. The people who say the snowflakes got in my hair, you mean some of them. Exactly. Sometimes. Counsel, I think we've exhausted the issue. Thank you, counsel. The case will be submitted. Before we go on to the last two cases, let me indicate, as I have previously, that we're going to hear 14-6168 first, which is the basics of the contention.